Cuma, per
JohNson, J.
The defendant in this case appeals on two grounds :
First. Because he ought not to be charged with interest, other than on the annual balances on his accounts, from the time of making them up. And
Second. Because he ought to have been allowed a credit of two and a half per cent on the day on which the money was vested in stock, as for money then paid away.
The general rule is, that an executor is liable for interest on funds which remain in his hands, whether he derives a profit from them or not; and it is r 7_ founded upon the presumption, that he has either made" a profit, or that as much is lost to the fund by his neglect. The same good sense, which dictated the rule, has incorporated with it qualifications by which it is accommodated to all the variety of circumstances that could enter into the receipt or disbursement of 1 , securing on the one hand the prompt and faithful charge of the duty of the executor, and on the other allowing him the exercise of a discretion in accommo-t0 , . ....... dating his management to the peculiar situation oi the fund; promoting in the end the true interest of those titled to it. Amongst the latter of these maybe merated, the exception allowed when the exigencies an estate may render the present command of funds necessary to meet the growing demands upon' it, or to preserve good faith in the fulfilment of contracts; and those which allow him a reasonable time tS look out for suitable objects in which to invest them. 3 Bro. C. C. 73. 434. 2 Madd. Cha. 135. For it is unreasonable to *460 require that an executor should sacrifice all his other concerns to this duty; and it would furnish a temptation and an excuse to act with precipitancy, and conse-quentjy eXp0se h¡m more to improvident contracts.
From this view of the subject it follows that, in determining the time when the liability of an executor to pay interest shall commence, we must look through all the concerns of the estate, the source from whence the fund is received, the time and manner of its receipt, and the nature and extent of the demands upon it. If, for example, the receipts are considerable and at fixed periods, and the facilities of investment great and the accruing demands inconsiderable, all that would be necessary would be a reasonable time to make the investment. But if, on the contrary, the receipts were inconsiderable, irregular, and uncertain, and the growing demands so considerable as to render it doubtful whether any surplus would remain, time ought to be allowed him to ascertain the result. The peculiar circumstances of every case must therefore so control the rule as to make it answer the purpose for which it was designed. The complainants in this case claim interest from the time the funds came into the hands of the defendant: and the defendant on his part insists that he ought to be allowed a reasonable time after making up his annual accounts to make investments ; at any rate, that he ought only to be charged with interest on the annual balances. The estate consists of an extensive planting establishment, incumbered with all the incidents and exposed to all the casualties and expenses of such property, and the fund on which the interest is claimed consists in the proceeds of the crops, received from time to time as the produce could be prepared and sent to market. The defendant’s accounts are regularly made up in the month of August in each year, and they exhibit what every one accustomed to the management of such pro *461 perty would readily admit would arise in the course of its administration. Expenses arise, and the disbursements are almost daily; and in making up the annual accounts it is found that the balance in favour of the estate is sometimes «considerable, at others less, and again it is found that the estate is in debt. The question then arises, when ought the liability of the defendant to account for interest to commence under the circumstances of this case ¶ On this subject I have not been able to ascertain that our own Courts have laid down any fixed rules, and I should be unwilling to derive them from any other source; as almost every country, and even different sections of the same country, might present circumstances calculated to vary it. The nearest that we can approach any thing like a settled rule is, by resolving it into the exercise of a sound discretion in the application of the general rule to each particular case. A prudent man would never make investments, unless with a view to speculations, until he had ascertained with some decree of precision what sum remained after meet-ting the demands upon him, and when his receipts are annual and his expenses current throughout the year. This could not be done until his annual accounts were made up. It would therefore be rigid and harsh, and in the main injurious to the estate, to compel an executor either to make investments or to pay interest in any case where the income was derived from planting, until his annual accounts were made up and the balance ascertained. It would be difficult, if not impossible, for him . r • to ascertain by any other means or at any earlier time what sum the exigences and growing demands on an estate, situated as this was, might require, or what ° . lance should remain. I have therefore no difficulty in coming to the conclusion, and adopting as the rule this case and others similarly situated, that the defendant . . t . ís not chargeable with interest, except on the annual *462 balances. It is reasonable too that time should be allowed an executor to look out for proper objects in which to make investments after the balance is ascertained; and taking all the circumstances of this case into consideration, and as a rule applicable to cases thus situated, six months might be allowed after making up the accounts to make thé investments. But the present defendant does not come within the benefit of it, as the investments made by him were at a greater distance of time. In stating the accounts between the parties the commissioner is therefore directed to debit the defendant with interest .on the annual balances against him from the time the accounts were made up.
tor ofa^iant.-j?f,es‘at<5is liable for interest only on balances?1 fix months are allowed him of®p“dn*I^"f1 balances to make investments.
■torbesidesTen percent al-vesting funds aílowedTwo15 and a half for tions of the fund is still under his own control and tion not°final.
The second ground is one of little consequence to the parties, as it only involves the interest on the commissions of two and a half per cent claimed for investing the fund in stock; as under any circumstances the defendant would be entitled to the commissions on the final settlement of the estate. The executors’ law (Pub. Laws, 495) allows an executor to retain in his hands, as a compensation, two and a half per cent on all sums which he receives, and the like sum of two and a half per cent on all sums which he shall pay away in credits, debts, legacies, or otherwise; and ten per cent for all sums arising out of moneys let out at interest. The intention of the act cannot I think be misconstrued. The ten per cent was evidently intended as compensation for *^ie trouble of managing the fund while in the hands of the executor; and the two and a half per cent for paying refers to the final disposition of it, or, in other to ^Iat P°int °f time when the, executor’s power over it ceases, or when he has disposed of it in the man-directed by the will of the testator. It cannot without great injustice be so referred to any other time ; for ° J 1 . if it was to be allowed to every application or appropriation, the executor might, by letting out and calling *463 in at short periods, make his commissions exceed any profits which could be expected to arise from it by way of interest. The mode of determining what time he is to be credited with it is, by inquiring whether he has made a final disposition of the fund, or whether his power over it has ceased. The will of the testator recommends,, that if there should be any surplus funds they should be vested in bank stock, and in pursuance of this recommendation the defendant did invest a part of them. He has therefore made a disposition of them in the manner authorized, and has discharged the duty enjoined upon him, and has earned his two and a half per cent for paying it away$ and the Commissioner is directed to credit it as the day on which the fund was invested. A different rule would obtain, when the investment was made by the executor of his own accord and upon his own responsibility ; because then the fund would be still under his own management and control, and the disposition of it not final.
The complainants also move to reverse the decree of the Circuit Court, so far as it goes to discharge the defendant from his liability for the loss sustained on the sales of produce by his factors, K. Simons & Sons. The liability of the defendant is not increased nor diminished by the agency of K. Simons & Sons in effecting the sales. On the one hand, he was not bound to require more diligence of his agents than he himself was bound to observe; and it is unreasonable on the other, that he should shelter himself under the negligence of an incompetent or dishonest agent. This question will be simplified by considering it as though the sales had been made by the defendant himself. An éxecutor and trustees are generally greatly favoured in the Court of Equity, as ah encouragement to engage in the discharge of duties always onerous and frequently complex and difficult; and few would undertake to perform them if *464 they were to be made responsible for all the casualties and misfortunes to which an estate in the hands of the most circumspect is exposed. When he has honestly an(j faithfully endeavoured to acquit himself of his charge, the Court is slow to visit a loss upon him ; having however always so much regard to the cestui que trust as to prevent negligence and,abuse. Rowth v. Howell, 3 Ves. 565. Powell v. Evans, 5 Ves. 843. Upon this principle it was held by Lord Hardwicke in the case of Knight v. The Earl of Plymouth, (cited in 3 Ves. 565) that a receiver was not liable on account of Hhe failure of a banker in whose hands he had deposited funds' with the intention to draw for them, and who was in good credit at the time the deposit was made. The rule to be extracted from the current decisions on this subject is one founded in practical good sense, and requires that an executor should manage the funds committed to his care with the same care and diligence that a Pru<^en^ an(^ cautious man would bestow on his own concerns. The loss in. this case arose out of a sale made in conformity with the general usage of the country, anc* *n the manner and upon the conditions that nineteen-twentieths of the whole produce of this state is disposed of, — and to a house in apparent good credit. It WQU]j |-,0 a violation of both principle and rule to charge the defendant. The Court therefore concur with the Chancellor on this ground. In the case of Barksdale v. Brown, 1 Nott & M’Cord’s Rep. 517, it was decided that, under instructions to sell for cash, factors were held liable for a loss arising out of a sale made in conformity with the usage, and it has been insisted in support of this ground, that upon the authority of that case Simons &/■ Sons were liable to the defendant for the loss, and that therefore he was liable to the complainants. The cases are not however analagous. There the instructions were to sell for cash. True they *465 were generally to do so. But here it was for the best, leaving the factors to exercise a discretion which it has been before shewn they exercised with prudence. It has been said too, that the defendant is chargeable with negligence in parting with the crop without some security for payment. Generally, I am inclined to think, thatrule ought to prevail; but the case of Knight v. Earl of Plymouth is an answer to its application to this case. The defendant might, if he honestly thought it to the interest of the estate, have sold it on a credit, and whether that was effected by express stipulation or by a tacit acquiescence in the usage was immaterial; and if the purchaser was apparently solvent the defendant had discharged his duty. The indiscriminate application of such a rule would require persons thus situated to practice the childish incredulity of holding fast on every bale of cotton, or barrel of rice, with one hand, whilst receiving the price with the other; and no one would be willingly exposed to a situation so ridiculous.
An execu-to manage the ftecareand diligence of a cautious man; hle/fhis fac-" tor (who was sold on a few days credit, in of business, chaserefSk."

*465
Decree modified.